IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALEXIS CASTELLE,

       Plaintiff,

v.                                                                                  CV 14-247 WPL

CAROLYN W. COLVIN, *Acting*
*Commissioner of the Social Security*
*Administration*,

       Defendant.

## MEMORANDUM OPINION AND ORDER

Alexis Castelle filed an application for Disability Insurance Benefits on January 23, 2009. (Administrative Record ("AR") 13.) She alleges disability beginning February 19, 2008, due to arthritis in her knees. (AR 136, 166.) Administrative Law Judge ("ALJ") Alexander Weir, III, held a disability hearing on March 26, 2012. (AR 24-47.) On March 30, 2012, the ALJ determined that Castelle was not under a disability as defined by the Social Security Act and was therefore not entitled to benefits. (AR 10-23.) Castelle filed an appeal with the Appeals Council, but the Council declined her request, making the ALJ's decision the final decision of the Social Security Administration ("SSA"). (AR 1-5.)

Castelle sought review of the SSA's decision (Doc. 1) and filed an opposed motion to reverse or remand her case to the SSA. (Doc. 22.) The Commissioner of the SSA ("Commissioner") responded (Doc. 24), and Castelle did not file a reply. For the reasons explained below, I deny Castelle's motion and dismiss this case with prejudice.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is only a scintilla of evidence supporting it. *Hamlin*, 365 F.3d at 1214 (quotation omitted). However, substantial evidence does not require a preponderance of evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See Hamlin*, 365 F.3d at 1214 (quotation omitted). I may reverse and remand if the ALJ has failed "to apply the correct legal standards, or to show us that []he has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Because Castelle proceeds *pro se*, I construe her pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall*, 935 F.2d at 1110). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements[.]" *Garrett v. Selby, Connor, Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110)

2

(alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4) (2014). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); 20 C.F.R. § 404.1520(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(f). If a claimant is not prevented from performing her past work, then she is not disabled. *Id.* The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### FACTUAL BACKGROUND

Castelle is a fifty-four-year-old woman who completed three years of college. (AR 118, 142.) Castelle has worked as an operations manager, bookkeeper, business manager, officer manager, gift planning associate, booking agent assistant, and sales support representative. (AR 144, 160.)

There are no records in the AR of any treatment received by Castelle for her conditions. Instead, the AR is comprised solely of consultative examination reports, RFC assessments, disability reports, and vocational consultant case analyses.

Castelle completed some undated Disability Reports. She stated that she has arthritis in her knees. (AR 136.) She claimed that her knees have always been a problem, but had gotten worse. (*Id.*) Castelle indicated that she has flare ups of pain and an inability to walk more frequently. (*Id.*) She stated that she had several falls, resulting in more injuries, and making it difficult to move around. (*Id.*) Castelle requires assistance to stand from a sitting position. (AR 179.) If she has to walk extensively, she has severe leg cramps. (*Id.*) With regard to her ability to work, Castelle wrote that if she sits for too long, she has a difficult time standing. (AR 136.) Climbing stairs is difficult and painful when her knees are swollen. (*Id.*) It is also difficult for her to stand for long periods of time. (*Id.*) She stopped working a job on September 1, 2008, because of her condition and because the business was experiencing financial difficulties. (AR 136-37.) However, Castelle wrote that she was still looking for work—work that would not keep her seated for long periods of time. (AR 143.) Castelle stated that she was taking Goody's Powder pain relievers and Motrin. (AR 141.)

In two of her Disability Reports, Castelle listed her treating doctors/clinics. (AR 139-40.) She listed three time spans during which she was treated: First, she was seen from approximately

1972 to 1974 at the Mt. Carmel Hospital in Detroit, Michigan, for knee cap dislocation. (AR 139.) Her knee caps would slip from the socket, resulting in falls. (*Id.*) As part of the surgery, pins were placed in both knees. (*Id.*) She wore a cast from her hip to her ankle for three months after each knee surgery. (AR 177.) Castelle wrote that she had to do physical therapy and re-learn to walk. (*Id.*) As a result of the surgery, she was homeschooled for a total of one year, and she was exempted from physical education in school since she could not perform the activities required. (AR 177, 181.) Second, she went to the emergency room at the Centinela Hospital Medical Center in Inglewood, California, in October 2001. (AR 140.) Castelle stated that her knees were extremely swollen, and she could not walk. (*Id.*) She received x-rays and medication. (*Id.*) Because she did not have medical insurance, she only saw the physician once. (*Id.*) Third, Castelle went to Healthcare Partners Medical Group in Los Angeles, California, from approximately 2002 to 2004 for stomach pain and nausea. (AR 140, 177.) There are no treatment records in the AR from any of these care facilities. Castelle stated that because she is not employed, she does not have health insurance and cannot see an orthopedic doctor. (AR 143.)

In what appears to be Castelle's final Disability Report, she reported that her condition had become worse. (AR 188.) She stated that she experiences more swelling and stiffness, walking and standing are more difficult, and she has to elevate her legs for hours. (*Id.*) Castelle also wrote that her left knee slipped out of place, causing her to fall down a flight of stairs. (*Id.*) Sitting for long periods of time produces extreme swelling in her knees, and sometimes her knees lock up. (AR 190.) With regard to her daily activities, Castelle stated that she needs assistance to lift her legs into and out of the shower where there are no handicap bars. (*Id.*) She asserted that if she has to go shopping or walk more than one block, she experiences extreme pain. (*Id.*) Further,

Castelle stated that she can no longer do her daily chores. (*Id.*) It is painful for her to clean anything below waist level. (*Id.*)

On June 17, 2009, Sondi Moore-Waters, M.D., performed a consultative examination of Castelle. (AR 197-204.) Castelle reported a pain level of five out of ten. (AR 197.) However, she had not seen a physician in three years. (*Id.*) Dr. Moore-Waters noted that Castelle did not use a cane or other device to walk, and her gait was within normal limits. (AR 197, 199.) She found that Castelle had mild tenderness in the joint lines and mild tenderness to palpation in the lumbosacral area. (AR 198-99.) Castelle's leg strength was three to four out of five on the right and four out of five on the left. (AR 198, 202.) Castelle's range of motion was normal for all joints, though she had 120 degrees of flexion in her knees, a slightly reduced extent of flexion. (AR 200-01.) Dr. Moore-Waters found that Castelle was unable to do any type of work requiring a lot of standing, walking, or sitting because of stiffness and pain in her knees. (AR 199.) However, she had no problems reaching or feeling. (*Id.*) Dr. Moore-Waters also found that Castelle was able to perform activities of daily living. (AR 203.)

X-rays taken the same day revealed osteoarthritic changes in both knees. (AR 205.) In the left knee, the osteoarthritic changes were moderately severe; there was joint space narrowing involving both the medial and lateral aspect of the knee, greater involving the medial aspect; hypertrophic changes existed in the distal femur and proximal tibia; a surgical staple appeared in the proximal tibia; and small joint effusion could not be excluded. (*Id.*) In the right knee, there were hypertrophic changes involving the distal femur; there was joint space narrowing both medially and laterally; an orthopedic stable was found in the proximal tibia; and joint effusion was not excluded. (*Id.*)

On July 17, 2009, non-examining physician Howard Colier, M.D., completed a Physical RFC Assessment. (AR 210-17.) He listed osteoarthritic changes to the bilateral knees and obesity as Castelle's diagnoses. (AR 210.) Dr. Colier found that Castelle could occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand or walk for six hours in an eight-hour workday; sit for about six hours in an eight hour workday; push or pull without limitation, except as indicated by lifting or carrying limitations; frequently climb ramps or stairs, balance, and stoop; occasionally kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds; and she would have to avoid concentrated exposure to hazards. (AR 211-12, 214.) Dr. Colier wrote that Castelle's "statements of limitations are not [sic] found to be partially credible." (AR 215.) Dr. Colier noted that Castelle had a mild reduction in range of movement (in the knees), x-rays of the bilateral knees showed osteoarthritis, and Castelle had full range of motion in all other joints, including in the neck and back. (*Id.*) Dr. Colier acknowledged that Dr. Moore-Waters's conclusions about Castelle's limitations were significantly different from his own findings and that he gave her opinion little weight. (AR 216.) Dr. Colier stated that Dr. Moore-Waters's opinion that Castelle could not do any type of work with a lot of standing, walking, or sitting was not supported by her physical exam or x-rays. (*Id.*)

On July 21, 2009, Kara Russell completed a Vocational Analysis for Castelle. (AR 169.) Russell found that Castelle was limited to the medium physical exertional level, capable of lifting or carrying fifty pounds frequently and twenty-five pounds occasionally. (*Id.*) Further, Russell found that Castelle could frequently climb ramps or stairs, balance, or stoop; occasionally kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds; and would have to avoid concentrated exposure to hazards. (*Id.*) Russell concluded that Castelle could do past relevant work as a booking agent. (AR 170.)

On March 25, 2010, consultative physician Tiffany Lee, M.D., examined Castelle. (AR 222-29.) Dr. Lee noted that Castelle's pain level was seven and a half out of ten, that the pain increases with cold weather and excessive walking, and that ibuprofen alleviates pain and swelling. (AR 222.) Dr. Lee wrote that Castelle admitted to smoking tobacco for thirty-seven years and drinking beer, wine, and liquor for over thirty years. (*Id.*) She has a family history of hypertension and breast cancer (mother) and heart attack (father). (*Id.*) Dr. Lee wrote that, according to Castelle, Castelle can independently dress, feed herself, use the toilet, and prepare meals. (AR 223.) Dr. Lee found no redness, heat, or swelling of any joint in the upper or lower extremity. (*Id.*) Castelle could stand on her heels but was unable to stand on her toes or squat because of pain. (*Id.*) Dr. Lee concluded that Castelle walked with normal gait and station, and she did not require an assistive ambulatory device. (AR 224.) Dr. Lee observed Castelle climb on and off of a chair and the exam table without assistance. (*Id.*) Dr. Lee found that Castelle had normal range of motion in all joints, including 150 degrees in both knees, and 5/5 strength in all areas. (AR 225-27.) Dr. Lee diagnosed Castelle with morbid obesity, hypertension, arthritis, and status-post bilateral knee surgery. (*Id.*) With regard to physical restrictions, Dr. Lee advised that Castelle avoid activities that require distance walking, excessive kneeling, heavy lifting, and repetitive squatting. (*Id.*)

On May 6, 2010, Tara Mintz completed a Vocational Analysis for Castelle. (AR 183-84.) Mintz found that Castelle was limited to the medium physical exertional level, capable of lifting or carrying fifty pounds frequently and twenty-five pounds occasionally. (AR 183.) Further, Mintz found that Castelle could frequently push or pull with both lower extremities, climb ramps or stairs, balance, stoop, or crawl; occasionally climb ladders, ropes, or scaffolds, kneel, or

crouch; and would have to avoid concentrated exposure to hazards. (*Id.*) Russell concluded that Castelle could do past relevant work as a booking agent assistant. (AR 184.)

On May 6, 2010, non-examining physician Robert Williams, M.D., completed a Physical RFC Assessment. (AR 230-37.) Dr. Williams diagnosed Castelle with arthralgias, status-post bilateral knee surgery, hypertension, and obesity. (AR 230.) Dr. Williams found that Castelle could occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand or walk for six hours in an eight-hour workday; sit about six hours in an eight-hour workday; push or pull with limitations in the lower extremities; frequently climb ramps or stairs, balance, stoop, or crawl; occasionally climb ladders, ropes, or scaffolds, kneel, or crouch; and would have to avoid concentrated exposure to hazards. (AR 231-34.) Dr. Williams stated that Castelle had no significant limitations in her activities of daily living. (AR 235.) He concluded that Castelle's allegations were not consistent with a listing level impairment. (*Id.*) In completing the RFC assessment, Dr. Williams gave great weight to Dr. Lee's assessment and pointed to Dr. Lee's findings that Castelle should avoid distance walking, excessive kneeling, heavy lifting, and repetitive squatting. (AR 236.)

### HEARING TESTIMONY

The ALJ held a hearing on March 26, 2012, at which Castelle and a Vocational Expert ("VE") testified. (AR 24-47.) Castelle was represented by an attorney. (*Id.*)

The ALJ informed Castelle that she had the right to be represented by an attorney or other representative if she wished, and the ALJ would postpone the hearing if Castelle wanted to obtain counsel. (AR 27-28.) Castelle stated that she wanted to proceed without an attorney. (AR 28.)

The ALJ asked if Castelle objected to any of the exhibits. (*Id.*) Castelle objected to Dr. Lee's consultative examination report, stating that Dr. Lee misconstrued a lot of her medical history. (*Id.*) For example, her father never had a heart attack, and she is only a social drinker. (*Id.*) Castelle complained that Dr. Lee made it sound like she had been drinking for over thirty years. (*Id.*) Further, Castelle testified that she reported to Dr. Lee a pain level of eight or nine out of ten, not the seven and a half in the examination report. (AR 28-29.) The ALJ noted Castelle's objection, but did not strike the evidence. (AR 29.)

Castelle testified that she attended three years of college. (AR 30.) She took accounting but did not receive a degree, license, or certificate. (AR 30, 35.) Castelle testified that she was not working at the time of the hearing, and she last worked from March to August 28, 2011, doing primarily bookkeeping as a property manager and accountant for a condominium association. (AR 30-32, 38.) She also attended board meetings, took minutes, and worked on a computer. (AR 39.) Castelle worked for thirty hours per week and earned fifteen dollars per hour. (AR 31.) Castelle testified that she and her employer came to a mutual decision that she not return because she was having difficulties getting to and from work—she experienced a lot of pain and swelling from walking to and from the bus she took to work. (AR 33.)

Castelle testified that, prior to her most recent job, she worked for a little over a month, starting in September 2010, for the Neighborhood Youth Association, helping them get their accounting department in order, and putting together a policy and procedure manual. (AR 36.) She worked full-time in an office as a sales support representative in February 2008, assisting a dessert manufacturing sales force. (AR 33-34.) She previously worked in fundraising, coordinating luncheons for donors to the Los Angeles Orthopedic Hospital, but left in 2005. (AR 34.) She worked on and off as a bookkeeper through a temporary agency. (AR 34-36.) From

2001 to 2004, Castelle was the full-time operations manager for a non-profit. (AR 36-37.) In 2000, Castelle was an office manager for Roto-Rooter. (AR 37.) She supervised one person, but did not have the authority to hire or fire employees. (AR 37-38.)

The ALJ asked if Castelle believed that she could do any of her past work. (AR 38.) Castelle testified that she can work because her mind is alright, but she has to deal with pain and swelling in her legs, knees, ankles, and feet. (*Id.*) She stated that she cannot take Vicodin or 800 milligrams of ibuprofen because her mind would become cloudy and fuzzy, and this would be unacceptable for someone working with money. (*Id.*) Castelle had been prescribed Vicodin in 2001, but she will not take it so that she can work. (*Id.*) Castelle testified that she was looking for work as a bookkeeper or accounting assistant. (AR 38-39.) She stated that she would prefer to work but that she experiences pain, and her knees lock up. (AR 40.)

Castelle testified that she had reconstructive surgeries in 1972 and 1973 for her knees. (*Id.*) She testified that she has no insurance now and therefore cannot see a doctor. (*Id.*) Castelle only takes over-the-counter medications. (*Id.*)

The ALJ next questioned the VE. (AR 41-45.) The ALJ asked the VE whether Castelle could perform her past relevant work at the same skill and exertional levels indicated by the Dictionary of Occupational Titles. (AR 43.) The VE testified that Castelle could perform her past relevant work and that she also has transferable skills. (*Id.*) The ALJ then asked the VE to consider a hypothetical person with the same age, education, and work background as Castelle, who can perform medium exertional work and can bend, stoop, crouch, and crawl occasionally. (AR 44.) The VE testified that such a person could perform all of Castelle's past relevant work. (*Id.*) Next, the ALJ asked the VE to consider the same hypothetical person, but who is limited to light work and who has occasional postural limitations. (*Id.*) The VE testified that such a person

could still perform all of Castelle's past relevant work. (*Id.*) Finally, the ALJ asked the VE to consider the same hypothetical person, but who is limited to sedentary work and who has occasional postural limitations. (*Id.*) The VE testified that such a person could perform all of Castelle's past relevant work, except fund raiser. (*Id.*)

Castelle asked the VE whether the hypothetical person could do her past relevant work if the person could not kneel, stoop, lift more than twenty pounds, or walk up or down stairs. (AR 45.) The VE testified that such a hypothetical person could still do the sedentary jobs among Castelle's past relevant work. (*Id.*) Castelle stated that sitting at a desk for eight hours makes her swelling and pain more intense. (AR 46.) After eight hours of sitting at a desk, Castelle needs help moving around her house and must elevate her legs. (*Id.*)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ reviewed Castelle's application for benefits according to the sequential evaluation process. (AR 10-23.) At the first step, the ALJ found that Castelle engaged in substantial gainful activity from June through December 2008, September through November 2010, and March through August 2011. (AR 16.) The ALJ noted that Castelle earned a total of $13,083.55 from two employers for the listed months in 2008; a total of $3,409 from two employers for the listed months in 2010; and a total of approximately $1,900 from one employer for the listed months in 2011. (AR 17.) The ALJ found that Castelle returned to work, engaging in substantial gainful activity, within twelve months of her alleged onset of disability—February 19, 2008. (*Id.*)

The ALJ continued to step two, at which he concluded that Castelle suffers from the severe impairments of arthritis and obesity. (AR 17-18.) At step three, the ALJ found that Castelle's combination of severe impairments did not equal one of the listed impairments. (AR

18.) The ALJ explained that Castelle does not meet the criteria of listing 1.02 because her arthritis does not prevent her from being able to ambulate effectively, and obesity is not a listed impairment. (*Id.*)

The ALJ then determined Castelle's RFC, finding that Castelle can perform the full range of medium work. (*Id.*) She can lift or carry fifty pounds occasionally and twenty-five pounds frequently, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push or pull without significant limitation. (*Id.*)

The ALJ noted that a state agency medical consultant opined that Castelle was capable of medium work. (*Id.*) The ALJ also stated that Castelle had not been prescribed narcotic or other pain medication, that she had not sought or received medical treatment since 2009, and that she engaged in substantial gainful activity after her alleged onset date. (*Id.*) As a result, the ALJ discounted her claims of pain and limitations as not fully credible. (*Id.*)

The ALJ concluded at step four that Castelle could perform past relevant work as an accounting clerk, administrative assistant, bookkeeper, officer manager, and fund raiser. (*Id.*) The ALJ concluded that Castelle was not disabled from her alleged onset date through December 2008 and from September 2010 through the date of the decision because she was engaging in substantial gainful activity and there was no continuous period of twelve months in which she was not engaging in substantial gainful activity. (AR 19.) The ALJ further concluded that Castelle was not disabled from January 2009 through August 2010 because she was capable of performing her past relevant work. (*Id.*)

Castelle appealed the decision to the Appeals Council, but the Council found that Castelle's reasons for disagreeing with the hearing outcome did not provide a basis for changing

the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1-2.)

## DISCUSSION

Castelle requests that the Court review her medical documents, including particular x-rays, and award benefits. She asserts that she has had to work—and endure physical pain—or face homelessness for herself and her family. I construe Castelle's discussion of needing to work despite great pain (*see* Doc. 22 at 3) to be an argument that the ALJ erred at step one of the sequential evaluation process by determining that Castelle was not disabled for certain periods of time after her alleged onset date due to substantial gainful activity. Next, Castelle argues that the ALJ erred at step three by failing to find that she met a listed impairment.

## I.     Step One

Castelle states that, while her mental capacity has not been affected, her physical pain, swelling, and muscle cramping have increased with age; she has a hard time getting up from a sitting position and performing tasks such as filing in low cabinets; and while some of her past employers have been understanding of her limitations, they have been few and far between. Castelle argues that the ALJ ignored the guidelines under the Listing of Impairments and instead focused on the fact that she worked to provide for her family despite her pain.

The Commissioner argues that if a claimant has engaged in substantial gainful activity, she is not disabled. The Commissioner points out that it is undisputed that Castelle engaged in substantial gainful activity after her alleged onset date. Furthermore, the Commissioner contends that, while Castelle appears to argue that she should not be penalized for working through her pain in order to support her family, disability requires pain that is so severe that substantial gainful employment is precluded.

14

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (2014); *see* 20 C.F.R. § 404.1505. This twelve-month period requires "twelve consecutive months." *Phillips v. Colvin*, No. 13-CV-01634-REB, 2014 WL 4636379, at *1 (D. Colo. Sept. 16, 2014) (unpublished) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). Federal regulations state, "If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience." 20 C.F.R. § 404.1520(b). The Tenth Circuit has found that "disability requires more than mere inability to work without pain. 'To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). "Thus, if the [SSA] finds that the claimant is *actually* engaged in substantial gainful activity, any inquiry into her *capacity* to engage in substantial gainful activity is irrelevant." *Manning v. Sullivan*, 978 F.2d 1267, at *1 (10th Cir. 1992) (unpublished table decision) (emphasis in original) (citing *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988)).

Castelle does not dispute the ALJ's finding that she engaged in substantial gainful activity from June through December 2008, September through November 2010, and March through August 2011. Nor does Castelle dispute the ALJ's finding that she engaged in substantial gainful activity within twelve months of her alleged onset of disability on February 19, 2008. Further, Castelle does not assert that her activity during any of these periods constituted an unsuccessful work attempt. *See* 20 C.F.R. § 404.1574(c). Therefore, I do not

15

review the ALJ's findings that Castelle engaged in substantial gainful activity during these periods.

Because Castelle engaged in substantial gainful activity from June through December 2008, September through November 2010, and March through August 2011, I find that the ALJ did not err in determining that Castelle was not disabled from February 19, 2008, through December 2008 and from September 2010 through the date of decision on March 30, 2012.

## II.      Step Three

Castelle argues at step three that the ALJ erred by ignoring the guidelines set out by the Listing of Impairments. Castelle cites to Listing 1.00—Musculoskeletal System and highlights various phrases and sentences that she contends are applicable to her. First, Castelle highlights that "[d]isorders of the musculoskeletal system may result from *hereditary, congenital*, or acquired pathological processes." (Doc. 22 at 4 (emphasis in original) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(A)).) Second, "*loss of function may be due to bone or joint deformity or destruction from any cause*." (*Id.* (emphasis in original) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(1)).) Third,

> *functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment.* . . . [C]onsideration of the *ability to perform these activities must be from a physical standpoint alone.*

(*Id.* (emphasis in original) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(a)).)

The Commissioner contends the ALJ could have stopped his analysis completely at step one because Castelle engaged in substantial gainful activity, yet continued through step four,

going "beyond [the] regulatory requirement."[1] (Doc. 24 at 6.) Nonetheless, the Commissioner

argues that Castelle's knee impairment is not per se disabling, and she does not meet the

requirements of a Listing. The Commissioner states that the specific musculoskeletal listing

relevant to Castelle's claims is Listing 1.02—Major dysfunction of a joint(s) (due to any cause).

Listing 1.02 requires 1) "gross anatomical deformity (e.g., subluxation, contracture bony or

fibrous ankylosis, instability)," 2) "chronic joint pain and stiffness with signs of limitation of

motion or other abnormal motion of the affected joint(s)," 3) "findings on appropriate medically

acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected

joint(s)," and 4) "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or

ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404,

Subpt. P, App'x 1, § 1.02. The Commissioner asserts that it is unclear from the record whether

Castelle met the first requirement. However, the Commissioner argues that, even if Castelle did

meet the first requirement, she certainly could not show that she was unable to ambulate

effectively. "Ineffective ambulation is defined generally as having insufficient lower extremity

functioning . . . to permit independent ambulation without the use of a hand-held assistive

devices(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P,

App'x 1, § 1.00(B)(2)(b).

The period from December 2008 to September 2010 is a "closed period," wherein the

ALJ had to "'determine[s] [whether] a new applicant for disability benefits was disabled for a

finite period of time which started and stopped prior to the date of his decision.'" *Shepherd v.*

---

[1] The Commissioner failed to recognize that the ALJ only found at step one that Castelle was not disabled from February 19, 2008, through December 2008, and from September 2010 through the decision date of March 30, 2012. The ALJ had not yet accounted for the period from December 2008 to September 2010, and he addressed the issue of disability for that period by proceeding through the first four steps of the sequential evaluation process. (*See* AR 19.)

*Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987)). With respect to whether Castelle met Listing 1.02 during this closed period, the ALJ was required to determine whether "objective medical and other findings" satisfied "all of the criteria of [the] listing." 20 C.F.R. § 1525(c)(3); *see also* Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("Whether . . . an . . . impairment meet the requirements of [a] listing[] is usually more a question of fact than a question of medical opinion. . . . In most instances, the requirements of listed impairments are objective, and . . . is simply a matter of documentation."). A claimant's "statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a).

The ALJ found that Castelle's arthritis of her knees does not prevent her from ambulating effectively. (AR 18.) Therefore, the ALJ concluded that Castelle did not meet the requirements of Listing 1.02. The only mentions in the AR of Castelle's ambulation by medical sources are from Dr. Moore-Waters's June 17, 2009, and Dr. Lee's March 25, 2010, consultative examination reports. (AR 197-204; 222-29.) Dr. Moore-Waters observed that Castelle did not use a cane for ambulation, and her "gait was within normal limits." (AR 197, 199.) Dr. Lee found that Castelle ambulated with "normal gait and station," and she did not use or require an assistive device. (AR 224, 227.) Despite Castelle's subjective complaints about her walking difficulties (*see* AR 33, 136, 143, 179, 181, 188, 190), there is substantial evidence in the record to support the ALJ's decision that Castelle did not meeting the requirements of Listing 1.02. Therefore, I find that the ALJ did not err in determining that Castelle was not disabled at step three of the sequential evaluation process.

CONCLUSION

I conclude that the ALJ did not err at step one by concluding that, because Castelle engaged in substantial gainful activity, and there was no continuous period of twelve months therein where she did not engage in substantial gainful activity, she was not disabled from February 19, 2008, through December 2008 or from September 2010 through March 30, 2012. Further, I conclude that the ALJ did not err in finding that Castelle was not prevented from ambulating effectively and therefore did not meet the requirements of Listing 1.02 for the closed period from January 2009 through August 2010. Accordingly, I deny the motion to remand and dismiss this case with prejudice.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge

19

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.